IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| YAGNIRA RODRIGUEZ-RONDON,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ET AL.,<br><br>Defendants. | CIV. NO.: 26-1419 (SCC) |

**OPINION AND ORDER**

Pending before the Court is Defendants'[1] United States Citizenship and Immigration Services ("USCIS"); Markwayne Mullin as the Secretary of the Department of Homeland Security ("DHS"); Joseph B. Edlow as Director of USCIS; Sarah Kendall as USCIS Acting Associate Director of the Field Office Directorate of the DHS; Natalia Figueroa as the Field Office Director of the USCIS San Juan, Puerto Rico office; David Venturella as the Acting Director for Immigration and Customs Enforcement ("ICE"); Garret J.

[1] Although Plaintiff does not explicitly state this for all the Defendants in her Complaint, the Court assumes that Plaintiff sues all Defendants, where applicable, in their official capacity. *See* Docket No. 1, ¶¶ 13-24.

Ripa as the Miami Field Office Director for ICE and Enforcement Removal Office ("ERO"); Carmen Figueroa as Puerto Rico Field Office Director for ICE and ERO; Kash Patel as Director of the Federal Bureau of Investigations ("FBI"); Daren K. Margolin as Director for the Executive Office of Immigration Review ("EOIR"); Todd Blanche as Attorney General ("AG") of the United States; Stephen Muldrow as the United States Attorney for the District of Puerto Rico; and the United States of America (collectively, "Defendants") Motion to Dismiss Plaintiff Yagnira Rodriguez-Rondon ("Plaintiff")'s Complaint. *See* Docket No. 10; *see also* Docket No. 1. Plaintiff opposed Defendants' Motion to Dismiss and requested, in the alternative, that the Court grant her leave to amend the Complaint. *See* Docket No. 12, pg. 2.

After careful consideration of the Parties' filings, and for the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED in part and HELD IN ABEYANCE in part**.

## I. BACKGROUND

In her Complaint, Plaintiff alleges that she entered the United States on or about May 23, 2022, in Arizona and was in Defendants' custody but subsequently released. *See* Docket No. 1, ¶¶ 27-28. Approximately a month later, on June 16, 2022, Defendants issued Plaintiff a Notice to Appear ("NTA") before the San Juan Immigration Court, with an "Initial Master Calendar Hearing set for August 2, 2022." *Id.* at ¶ 29. On November 14, 2022, however, "removal proceedings were administratively closed pursuant to a joint request by DHS and Plaintiff." *Id.* at ¶ 30.

Since her removal proceedings were administratively closed—indeed, terminated, *see id.* at ¶ 34—on September 27, 2023, Plaintiff filed a petition with USCIS to change her immigration status, including Form I-485, titled "Application to Register Permanent Residence or Adjust Status" (the "Application"). *Id.* at ¶ 36. Plaintiff argues that, in the two years following the filing of the Application, she complied with all the requirements mandated by Defendants to adjudicate her Application, including a biometrics collection and a Request for Evidence ("RFE"), but they failed to do so. *Id.* at ¶¶ 37-44.

More than two years later, on October 27, 2025, DHS

issued Plaintiff a new NTA, thereby placing her again in removal proceedings despite her pending Application. *Id.* at ¶ 45. Plaintiff alleges that, because she is a national of Cuban descent, Defendants placed her Application on hold pursuant to a Policy Memorandum requiring a "Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Alien from High-Risk Countries."[2] *Id.* at ¶¶ 12, 46-47. On July 31, 2026, USCIS issued Plaintiff a "Notice of Administrative Closure stating that, because Plaintiff remained in removal proceedings and USCIS regarded her as a non-arriving alien, 'only EOIR has jurisdiction to grant or deny' the . . . [Application]." Docket No. 12, pg. 5 (citation omitted).

---

[2] Plaintiff notes that the USCIS Policy—otherwise known as "PM602-0192"—asks to "[p]lace a hold on pending benefits requests for Aliens from countries listed in Presidential Proclamation (PP) 10949." Docket No. 1, pg. 11. The President's Proclamations, 10948 and 10949, included Cuba. *See e.g.*, Proclamation No. 10949, 90 Fed. Reg. 24497, 24499 (June 4, 2025) ("I have determined to partially restrict and limit the entry of nationals of the following 7 countries: Burundi, *Cuba*, Laos, Sierra Leone, Togo, Turkmenistan, and Venezuela. These restrictions distinguish between, but apply to both, the entry of immigrants and nonimmigrants.") (emphasis added); *see also Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008) (holding that "[w]hen ruling on a Rule 12(b)(6) motion to dismiss, a district court is generally limited to considering 'facts and documents that are part of or incorporated into the complaint' . . . . [in addition to] 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'") (internal citations omitted).

## II. PROCEDURAL HISTORY

In her complaint, filed with the Court on June 26, 2026, Plaintiff asks that the Court issue declaratory, injunctive, and mandamus relief from Defendants' failure to adjudicate her Application. Docket No. 1, ¶ 1. In response, on September 4, 2026, Defendants filed the instant Motion to Dismiss, arguing that the Court lacks jurisdiction to hear Plaintiff's claims because, among other reasons, they are now moot. *See* Docket No. 10. Plaintiff, in turn, filed her Opposition on September 18, 2026. Docket No. 12.

On the same day, Plaintiff filed a Supplemental Motion asking the Court to take notice of intervening facts and to consider them in its determination of the case.[3] *See* Docket No. 13, pg. 5. Finally, on October 21, 2026, Plaintiff filed an "Urgent Motion to Expedite Consideration of Pending Dispositive Motion," where she requests, *inter alia*, that the Court "issue a ruling before November 2, 2026," of the pending motions before the Court,[4] which Defendants

---

[3] In short, Plaintiff "requests that the Court take notice that Plaintiff's Individual Hearing before the . . . Immigration Court has been advanced from July 14, 2027 to November 2, 2026, that applications and documentary evidence [were] due October 26, 2026, and that these intervening developments be considered in connection with Defendants' Motion to Dismiss . . . and Plaintiff's Opposition . . . ." Docket No. 13.

[4] In this Motion Plaintiff requests the following: "[T]hat the Court: (1) take

replied[5] to on October 26, 2026. *See* Docket No. 14, pg. 3; *see also* Docket No. 15.

## III. STANDARD OF REVIEW

Defendants moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") and Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). *See* Docket No. 10. Under Rule 12(b)(1), a defendant may move for dismissal for want of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction carries the burden of demonstrating its existence. *Acosta-Ramírez v. Banco Popular*, 712 F.3d 14, 20 (1st Cir. 2013) (citations omitted).

When considering a Rule 12(b)(6) motion, the Court must determine whether Plaintiff's complaint contains "enough facts to state a claim to relief that is plausible on its

---

notice of the October 26 and November 2 EOIR deadlines; (2) expedite consideration of Defendants' Motion to Dismiss, Plaintiff's Opposition, and Plaintiff's Notice of Supplemental and Intervening Facts; (3) issue a ruling before November 2, 2026[,] if practicable, or establish an expedited briefing [or] status schedule; and (4) grant such other procedural relief as the Court deems just and proper. [But otherwise clarifies that she] does not seek, by this motion, to compel approval of adjustment or to enjoin EOIR proceedings." Docket No. 14.

[5] In summary, Defendants argue that "Plaintiff's alleged intervening circumstance, namely that the merits hearing has been advanced to November 2, 2026, does not alter the jurisdictional analysis" and that "[b]ecause Plaintiff cannot identify a discrete action that DHS is required by law to take pursuant to § 706(1) [of the Administrative Procedure Act] or a clear, non-discretionary duty enforceable through Mandamus, neither provides a basis for the relief Plaintiff seeks." Docket No. 15, pgs. 2-3.

face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To make such a determination, the Court embarks on a two-step analysis. *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).

First, while the Court is required to accept the Plaintiff's well pleaded allegations as true, such a mandate does not mean that the Court will accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" as these allegations are not well pleaded under the Rule 12(b)(6) framework. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, the Court must identify and disregard conclusory factual allegations because it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal citations and quotations omitted).

Second, the Court examines whether the factual allegations—devoid of legal conclusions—allow "the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* That is, in order to survive the Motion to Dismiss, the Plaintiff must have set forth allegations that "nudge [her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Importantly, this analysis is a context-specific task that relies on the Court's "judicial experience and common sense." *Iqbal*,

556 U.S. at 679.

## IV. ANALYSIS

As previously stated, Defendants seek to dismiss Plaintiff's Complaint "pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, for mootness, and [Rule] 12(b)(6) for failure to state a claim." Docket No. 10, pg. 3. First, they argue that the Court lacks subject matter jurisdiction "because USCIS has already acted on the [Application]" when, on July 31, 2026, it "issued a Notice to Plaintiff advising of its decision to administratively close [the] processing." *Id.* at pgs. 7-10. As a result, "Plaintiff has no claim on which this Court may compel USCIS to act," and her writ of mandamus request before the Court is "moot." *Id.* In any event, Defendants further argue, Plaintiff has failed to state a claim for relief because "there is no statute or regulation providing a time frame [that USCIS was required] . . . [to] complet[e] the adjudication process [of her Application]" under the Administrative Procedures Act ("APA"). *Id.* at pgs. 10-14.

In response, Plaintiff maintains that she does not "ask this Court to order USCIS to approve her . . . [A]pplication, decide her admissibility, or substitute its judgment for that of the immigration agencies. [Instead, s]he seeks judicial review

of the Government's refusal to allow her properly filed application to reach a merits decision . . . ." Docket No. 12, pg. 2. According to her, Defendants "cannot establish mootness simply by pointing to a post-suit administrative closure when the challenged withholding of adjudication remains capable of producing concrete consequences" and especially "since USCIS itself acknowledges that administrative closure 'does not constitute a grant or denial of the I-485 on the merits.'" *Id.* at pgs. 3, 8.

Plaintiff also cites two district court opinions: *Dorcas International Institute of Rhode Island v. U.S. Citizenship & Immigration Services*, 834 F. Supp. 3d 242 (D.R.I. 2026) ("*Dorcas*") and *Red Eagle Law, L.C. v. Edlow*, No. 26-cv-04850-CRB, 2026 WL 2476424 (N.D. Cal. Aug. 24, 2026) ("*Red Eagle Law*"). Taking both, she argues that Defendants' decision to "halt[] or alter[] adjudication of immigration-benefit applications . . . . w[as] contrary to law and arbitrary and capricious under the APA . . . ." *See* Docket No. 12, pgs. 8-10. Furthermore, Plaintiff contends that in her case, USCIS acted unreasonably slow and that "Section 706(1) [of the APA] authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed.'" *See id.* at

pgs. 12-13.[6]

### A. Federal Rule of Civil Procedure 12(b)(1)

#### i.USCIS Jurisdiction

As previously discussed, Defendants argue that this Court lacks jurisdiction over Plaintiff's claims because they are moot. *See* Docket No. 10, pgs. 7-13. Specifically, Defendants reason that once Plaintiff was placed "in removal proceedings, exclusive jurisdiction over the [Application] vested with EOIR," pursuant to 8 C.F.R. §§ 245.2(a)(1) and 8 C.F.R. § 1245.2(a)(1)(i). *Id.* at pg. 2. In other words, Defendants aver that USCIS lost its jurisdiction after Plaintiff was placed in removal proceedings. *See id.*

8 C.F.R § 245.2(a)(1) states that "USCIS has jurisdiction to adjudicate an application for adjustment of status filed by any alien, unless the immigration judge has jurisdiction to adjudicate the application under 8 CFR § 1245.2(a)(1)." In turn, however, 8 C.F.R. § 1245.2(a)(1)(i) requires that "[i]n the

[6] Plaintiff also urges the Court for a quick resolution of the pending Motions because, as she points out, her circumstances have now materially changed; not only is she in removal proceedings, but the immigration court advanced her removal hearing to November 2, 2026. *See* Docket No. 12, pg. 2 (outlining that her hearing in the immigration court was initially scheduled for July 24, 2027 and, on September 14, 2026, the court moved the hearing date to November 2, 2026, and "ordered Plaintiff to file all applications for relief and documentary evidence by October 26, 2026.").

case of any alien who has been placed in deportation proceedings or in removal proceedings (other than as an arriving alien), the immigration judge hearing the proceeding has exclusive jurisdiction to adjudicate any application for adjustment of status the alien may file." *Id.*

Here, the Court finds that jurisdiction to adjudicate Plaintiff's adjustment of status resides exclusively with the immigration judge. *See* 8 C.F.R. § 1245.2(a)(1)(i). As Plaintiff unquestionably has been placed in removal proceedings, her only remaining argument to evade the statute's clear language is if she is "an arriving alien." *See id.* Upon review of the filings before the Court, the only reference to that categorization is found in Defendants' Motion to Dismiss, where they argue that Plaintiff cannot be "an arriving alien" because she "entered the United States without inspection (and was thereafter paroled)." *See* Docket No. 10, pg. 2 n.1. But to qualify under the statute, she would have had to "seek[] admission to, or transit through the United States at a port of entry, or . . . [have been] interdicted at sea and brought to the United States, whether or not a port of entry." *Id.*; *see also* 8 C.F.R. § 1245.2(a)(1)(ii). Plaintiff, however, has not refuted Defendants' characterization of her arriving status. *See generally* Docket No. 1; *see also* Docket No. 12. As such, she

has not plausibly stated that she is able to evade 8 C.F.R. § 1245.2(a)(1)(i)'s jurisdictional requirement. *See id.*; *see also Rodríguez v. Municipality of San Juan*, 659 F.3d 168, 175 (1st Cir. 2011) ("Judges are not mind-readers, so parties must spell out their issues clearly, highlighting the relevant facts and analyzing on-point authority.") (citations omitted).

Plaintiff's support in *Dorcas* and *Red Eagle Law* does not rescue her claims. *See* Docket No. 12, pgs. 8-10. In short, she argues that *Dorcas* "undermines Defendants' categorical theory that USCIS may withhold benefit adjudications merely because the ultimate benefit is discretionary" and that *Red Eagle Law* "independently demonstrates that . . . [the President's Proclamations] are subject to judicial review." *Id.* While the Court generally agrees with Plaintiff's characterization of the Orders, they do not address the central flaw in her case: that is, USCIS's jurisdiction once she was placed in removal proceedings. *See generally id.* Accordingly, the Court finds that, pursuant to 8 C.F.R. § 1245.2(a)(1)(i), once she was placed in removal proceedings, "the immigration judge hearing the proceeding has exclusive jurisdiction to adjudicate any application for adjustment of status" thereby divesting USCIS of its jurisdiction. *See Viana Guedes v. Mayorkas*, 123 F.4th 68, 71 n.3 (1st Cir. 2024) (citation omitted).

**ii.Mootness**

The Court next turns to whether it has the authority to issue a "Writ of Mandamus pursuant to 28 U.S.C. § 1361 compelling Defendants to perform a duty owed to her, namely, the adjudication of her [Application]." Docket No. 1, ¶ 58. Defendants' main contention is that "Plaintiff has no claim on which this Court may compel USCIS to act . . . ." *See* Docket No. 10, pg. 8 (citing *Mohammed v. Holder*, 695 F. Supp. 2d 284, 289-290 (E.D. Va. 2010)).

"Article III of the Constitution limits federal-court jurisdiction to 'cases' and 'controversies.'" *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016) (citing U.S. Const., Art. III, § 2). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S 66, 72 (2013) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–478 (1990)). A case becomes moot, however, "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Service Employees*, 567 U.S 298, 183, 281 (2012) (internal quotation marks omitted).

Although 28 U.S.C. § 1361 provides that "district

courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff," this extraordinary relief is only appropriate in limited circumstances. *See* 28 U.S.C. § 1361; *see also Chatman v. Hernández*, 805 F.2d 453, 456 (1st Cir. 1986). Specifically, where "(1) plaintiff . . . ha[s] a clear right to relief; (2) defendant . . . ha[s] a clear duty to act; and (3) no other adequate remedy . . . [is] available.'" *Chatman*, 805 F.2d at 456 (citations omitted).

While the Court acknowledges Plaintiff's frustration with the untimeliness of her Application's adjudication and with Defendants' immigration policies,[7] it does not find that

---

[7] Plaintiff criticizes several policy decisions taken by Defendants on immigration and their consequences, including: 1) "USCIS['s] . . . Policy Memo entitled 'US Citizenship and Immigration Services Will Grant Adjustment of Status Only in Extraordinary Circumstances' [implemented] in an attempt to bypass Congress structured process that allows certain individuals in the United States . . . ."; 2) DHS's "new policy . . . [showing] greater authority to ask applicants to return to their home country for processing w[hich] affect[s] hundreds of thousands [o]f people"; and 3) an immigration judge's fear of getting fired as a result of "stronger pressure . . . judges [feel] because their livelihood is at risk based on how they decide the case that's sitting in front of them." Docket No. 1, ¶¶ 51-55 (citations omitted); *see also Aguilar v. U.S. Immigr. & Customs Enf't*, 510 F.3d 1, 24 (1st Cir. 2007) ("[The Court is] sensitive to the concerns raised . . . and [is] conscious that undocumented workers, like all persons who are on American soil, have certain inalienable rights. But in the first instance, it is Congress—not the judiciary—that has the responsibility of prescribing a framework for the vindication of those rights. When

Plaintiff either has a clear right to relief or that Defendants—at least with respect to USCIS—have a clear duty to act. *See Chatman*, 805 F.2d at 456. This is especially the case since, as here, USCIS administratively closed Plaintiff's pending Application once it was stripped of its jurisdiction.[8] *See Hassan v. Noem*, No. 25-cv-11469-DLC, 2026 WL 765697 at * 9 (D. Mass. Mar. 18, 2026) ("where, as here, USCIS rejected the . . . petitions based on the germane regulations and statutes, the plaintiff is unable to establish a clear right to the relief . . . .") (citation modified). As the Court is limited by the jurisdiction Congress and the United States Constitution has

Congress speaks clearly and formulates a regime that satisfies constitutional imperatives, the courts must follow Congress's lead. In that sense, it does not matter whether a court approves or disapproves of an agency's *modus operandi*.").

[8] The Court notes, however, that whether Defendants deliberately placed Plaintiff into removal proceedings to strip this Court or USCIS of its jurisdiction or "unnecessarily and capriciously . . . due to their inaction," *see* Docket No. 1, pg. 17, is beyond the scope of the Court's ruling. Although the Court credits Plaintiff's claims that "[d]espite . . . full compliance with all statutory and regulatory requirements . . . USCIS . . . failed to adjudicate [her Application]," *see id.* at ¶¶ 36-44, the posture of her case appears to indicate that Defendants acted reasonably in this respect: Defendants first placed Plaintiff in removal proceedings on October 27, 2025, she filed her Complaint in this Court on June 26, 2026, and her Application was subsequently administratively closed by USCIS on July 31, 2026, "on the basis that USCIS lacks jurisdiction over the . . . [Application since] Plaintiff is a non-arriving alien in removal proceedings . . . ." *See* Docket No. 1, ¶ 45; *see also* Docket No. 10, pg. 3.

afforded it, it is without any authority to grant Plaintiff's writ of mandamus relief.[9] Therefore, Plaintiff's writ of mandamus request is **DENIED**.[10]

## B. Federal Rule of Civil Procedure 12(b)(6)

### i. Collateral Challenges

Alternatively, Defendants argue that "were the Court

[9] The Supreme Court has held that "the Attorney General has *no discretion* to deny relief to a noncitizen who establishes his eligibility [for withholding of removal]." *Moncrieffe v. Holder,* 569 U.S. 184, 187 n.1 (2013) (emphasis added). 8 C.F.R. § 1245.2, however, clearly dictates that "an immigration judge has sole jurisdiction over adjustment of status applications for those in removal proceedings." *See Michel v. Mayorkas*, 68 F.4th 74, 77 n.1 (1st Cir. 2023). Thus, it is the immigration court that is tasked with adjudicating Plaintiff's Application. If the immigration court denies her application, she may appeal to another administrative body, the Board of Immigration Appeals. *See* 8 C.F.R. §§ 1003.1(b), 1003.3(a). And if she requires further review still, she may also appeal to the appropriate circuit court. *See* 8 U.S.C. § 1252(d)(1); *see also* § 1252(b)(2).

[10] Defendants cite 8 C.F.R. § 1252(g) to argue that the Court is prohibited from "impos[ing] judicial constraints upon prosecutorial discretion." Docket No. 10, pg. 10 (citing *Reno v. American Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999)). They do so because in her Complaint, Plaintiff seeks a Declaratory Judgment declaring that Defendants "request the termination of Plaintiff's removal proceedings." Docket No. 1, pg. 17. The Court agrees with Defendants. District Courts are generally forbidden from challenging the Attorney General's discretion to "*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno*, 525 U.S. at 482 (emphasis in original); *see also* Docket No. 12, pg. 15 (acknowledging that "Plaintiff nevertheless recognizes that the Complaint's original prayer requested a particular form of relief—an order directing Defendants to seek termination of removal proceedings—that may present a distinct § 1252(g) issue"). As such, the Court's authority to review—let alone grant—this request would be without statutory or Constitutional support and must necessarily be **DENIED**.

to find that Plaintiff's claim is not moot . . . Plaintiff fails to state a claim under the [APA]." *See* Docket No. 10, pgs. 13-14. In part, they further claim, because "Plaintiff has not established that USCIS failed to adjudicate her application for adjustment of status within a required time frame . . . . because there is no proscribed required time frame under which USCIS must act . . . [and because] Plaintiff [has not] pled such a time frame." *Id.* at pg. 13. Nevertheless, they conclude, "Plaintiff still has not alleged sufficient prejudice to state a claim under the APA." *Id.* at pg. 14 (citing 5 U.S.C. § 706).

In response, Plaintiff refutes that she failed to state a claim for relief, especially since she "alleges more than elapsed time. She alleges an affirmative national-policy hold, USCIS's own confirmation that the application was paused, USCIS's prior representation that the requested RFE evidence was required for a final decision, and a subsequent administrative closure without a merits adjudication." Docket No. 12, pg. 13.

Regarding prejudice, she contends that she has plausibly alleged that USCIS's delay created "prolonged legal uncertainty, exposure to renewed removal proceedings, and loss of the opportunity to obtain a timely merits decision from USCIS while [it] possessed and was actively processing the

application." *Id.* This prejudice, she further avers, is compounded by the fact that she now faces an "imminent final removal hearing [on November 2, 2026] while the [Cuban Adjustment Act] application USCIS accepted in September 27, 2023 . . . remains without a merits adjudication." *Id.* at pgs. 13-14.

Although the Court already found that it does not have subject matter jurisdiction to hear some of Plaintiff's claims because they are moot, the First Circuit has held that "[w]hile legal and factual issues relating to . . . [determining whether a particular noncitizen should be removed] can be raised in removal proceedings and eventually brought to the court of appeals for judicial review, certain claims, by reason of the nature of the right asserted, cannot be raised efficaciously within the administrative proceedings delineated in the [Immigration and Nationality Act]." *Aguilar v. U.S. Immigr. & Customs Enf't*, 510 F.3d 1, 11 (1st Cir. 2007). As the First Circuit put it, there are some claims that are collateral to the removal determinations allowing district courts to retain jurisdiction to hear them. *See id.* at 17 ("The trick . . . to distinguish[ing when the district court retains jurisdiction is] . . . to distinguish what must be exhausted from what need not be exhausted. In that endeavor, the most salient questions

involve whether the underlying claims are cognizable within the review process established by Congress, and if so, whether enforcement of the exhaustion requirement will allow meaningful judicial review without inviting an irreparable injury.") (citation omitted).

Here, the Court assumes that Plaintiff's collateral challenges include Defendants' delay in processing her Application; their decision to administratively close the adjudication without "constitut[ing] a grant or denial of her [Application] . . . ."; and Defendants' policy that led them to put Plaintiff's Application on hold. *See* Docket No. 12; *see also* Docket No. 1, ¶ 50 (noting that "Plaintiff received an email from the Office of the Resident Commissioner of Puerto Rico . . . [stating] that . . . 'USCIS indicated that due to a valid national policy, her case was under a temporal administrative pause while additional security reviews were made.'") (citations omitted). These decisions, however, are either all related to her removal proceedings—where Plaintiff "unquestionably ha[s] the right, under the [Immigration and Nationality Act], to raise these claims before the immigration judge, before the Board of Immigration Appeals . . . and ultimately before the court of appeals," *see Aguilar*, 510 F.3d at 14 (citations omitted)—or are moot because Defendants'

policy has been vacated. *See* Docket No. 1, ¶ 53 (describing that *Dorcas* held that "each of the Challenged Policies that USCIS enacted—the Benefits Hold Policy, the Global Asylum Hold Policy, the Comprehensive Re-Review Policy, and the Country-Specific Factors Policy—are declared unlawful and are vacated and set aside.") (citation modified). As Plaintiff's APA claims are limited to injunctive relief, there are no further claims for the Court to resolve. *See Bowen v. Massachusetts*, 487 U.S. 879, 880 (1988) (holding that "§ 702 [of the APA] denies the district courts review jurisdiction in actions against federal agencies seeking 'money damages' . . . .") (citing 5 U.S.C. § 702).

Even if the Court were to entertain Plaintiff's contention that USCIS unlawfully withheld adjudicating her Application and "Section 706(1) authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed,'" *see* Docket No. 12, pg. 12, Defendants are right that "[t]o proceed on a claim under 5 U.S.C. § 706(1), a plaintiff must assert 'that an agency failed to take a discrete agency action that it is required to take,'" Docket No. 10, pg. 13 (citing *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55 (2004)). But Plaintiff fails to plausibly state what agency action USCIS failed to take other than administratively

closing her case—an action that it was required to follow under the applicable statute. *See, e.g.*, Docket No. 12, pg. 13 (alleging "more than elapsed time" but failing to show what action, if any, USCIS was required to take in light of 8 C.F.R. § 1245.2(a)(1)(i).).

In other words, Plaintiff failed to state what further "action" USCIS "is required [or is able] to take" at this juncture. *See Norton*, 542 U.S. at 55; *see also* Docket No. 12, pg. 12 ("Plaintiff recognizes that *Norton* . . . requires a § 706(1) plaintiff to identify discrete agency action that the agency is legally required to take.") (citing *Norton*, 542 U.S. at 55). As previously discussed, the merits of Plaintiff's Application will continue in immigration court, Board of Immigration Appeals, or ultimately back in Federal Court. *See* 8 C.F.R. §§ 1003.1(b), 1003.3(a); *see also* 8 U.S.C. § 1252(d)(1); § 1252(b)(2). However, they cannot proceed in this Court and, thus, her collateral claims, at least as currently presented in the Complaint, must similarly be **DENIED**.

**ii.Leave to Amend**

Finally, Plaintiff asks that if the Court "concludes that the Complaint's original prayer for a particular mechanism . . . cannot be granted as framed," the Court should "preserve Plaintiff's live APA claims and permit amendment under

Federal Rule of Civil Procedure 15(a)(2)." *See* Docket No. 12, pg. 2. Defendants, for their part, are silent on whether they oppose this relief. *See generally* Docket No. 15.

Federal Rule of Civil Procedure 15 permits a party to "amend its pleading once as a matter of course" within certain temporal limits. Fed. R. Civ. P. 15(a)(1). "In all other cases," a party can amend its pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Under Rule 15(a)(2), the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the Court "must [not] mindlessly grant every request for leave to amend," and, "[w]hen a proffered amendment comes too late, would be an exercise in futility, or otherwise would serve no useful purpose, the district court need not allow it." *Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 58 (1st Cir. 2006) (citations omitted). Amendment is "deemed futile when the proposed amended complaint would fail to withstand a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6). *Crowl v. M. Chin Realty Tr.*, 607 F. Supp. 2d 245, 246 (D. Mass. 2009) (citing *Hatch v. Dep't for Child., Youth & Their Fams.*, 274 F.3d 12, 19 (1st Cir. 2001)).

In this case, it is not clear what further claims Plaintiff can bring that are either not moot or able to be redressable by

the Court. *See generally* Docket No. 1; *see also* Docket No. 12. As previously discussed, the main predicament Plaintiff faces is showing that this Court retains jurisdiction, despite USCIS losing it, and that her collateral challenges can be adequately remedied by this Court.

Nevertheless, considering the First Circuit's "liberal stance toward the amendment of pleadings" and its "longstanding policy favoring the resolution of disputes on the merits," *Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 36 (1st Cir. 2022) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'") (citations omitted), the Court will **GRANT** Plaintiff leave to amend her Complaint. If applicable, Plaintiff shall submit her Amended Complaint on or before **November 13, 2026**. Once Plaintiff pleads, Defendants shall submit their response, or otherwise plead, on or before **November 27, 2026**.

## V. CONCLUSION

Consistent with the above, Plaintiff's request for leave to amend her Complaint, at Docket No. 12, is **GRANTED.** Defendants' Motion to Dismiss at Docket No. 10 is **GRANTED in part and HELD IN ABEYANCE in part**. If applicable, Plaintiff shall submit her Amended Complaint on or before **November 13, 2026**. Once Plaintiff pleads, Defendants shall submit their response, or otherwise plead, on or before **November 27, 2026**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 29th day of October 2026.

S/ SILVIA CARREÑO-COLL

UNITED STATES DISTRICT COURT JUDGE